UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

TERRY LYNN OWENS,

        Plaintiff,                Case No. 1:07-CV-934

v.                                        Hon. Richard Alan Enslen

CORRECTIONAL MEDICAL
SERVICES, INC., *et al.*,

        Defendants.
_____/

## **OPINION**

      This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. On October 3, 2007, this Court ordered service of Plaintiff's Complaint on Defendants. This matter is currently before the Court on Defendant Peterson's Motion for Summary Judgment; Defendants Correctional Medical Services, Inc. ("CMS") and Dr. Gelabert's Motion for Summary Judgment; and Defendant Parker's Motion for Summary Judgment. All motions request summary judgment on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed two Responses and Defendants CMS and Gelabert filed a Reply. Upon review, Defendants' motions for summary judgment based on Plaintiff's failure to exhaust his available administrative remedies will be denied.

## **Applicable Standard**

      Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of

law. FED. R. CIV. P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199; 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining*

*Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**Facts**

Plaintiff Terry Lynn Owens presently is incarcerated with the Michigan Department of Corrections ("MDOC") and housed at the Florence Crane Correctional Facility ("ACF"). He sues CMS and the following ACF medical staff: Doctor Raymond Gelabert, Nurse Carol Parker and Nurse (unknown) Peterson.

Plaintiff alleges that on May 24, 2004, he suffered a work-related injury while housed at the Ingham County Correctional Facility, resulting in torn ligaments in his left knee. (Compl., 4.) He alleges that he was not fully aware of the extent of his injuries until November 25, 2004, shortly before he was transferred to the custody of the MDOC Reception Center in Jackson. *Id.* When he arrived at that facility, he advised the nurses that he needed to have surgery to repair his knee. *Id.* Plaintiff provided the Court with a copy of a memorandum that was sent to the facility from the Ingham County Correctional Facility, indicating that Plaintiff had been referred to an orthopedic surgeon, but that he had not been housed continuously for a sufficiently long period to facilitate the referral. (Compl., Ex. 1.)

Plaintiff was transferred to ACF on January 6, 2005. (Compl., 5.) When he arrived, he saw Nurse Parker, to whom he explained his need for knee surgery. He alleges that his medical file was not reviewed and that he was given Tylenol and prescribed Ibuprofen. *Id.* Thereafter, he saw Dr. Gelabert, Nurse Parker and Nurse Peterson on numerous occasions over a period of two years. He repeatedly complained of his pain and need for surgery. Plaintiff also wrote numerous grievances concerning his knee. Finally, an appointment was made to see an orthopedic surgeon. One month later, surgery was performed. *Id.* Plaintiff alleges that the delay in surgery caused his medical condition to worsen, substantially destroying his pattellofemoral ligament and femoral trochlea ligament. *Id.* at 6. In addition, he suffered advanced degeneration to his patella and damage to his anterior cruciate ligament. He now has severe degenerative arthritis of the left knee, has to use a cane to walk, and cannot perform any work requiring standing for more than one hour. *Id.* Plaintiff contends that CMS has a policy or custom of not referring prisoners to get needed surgery in a timely manner. *Id.* Plaintiff seeks compensatory and punitive damages.

## Discussion

I. **Applicable Law**

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640,

642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 127 S. Ct. at 922-23.

In interpreting the PLRA, it is appropriate to look for guidance to the substantively similar exhaustion rules applicable in habeas cases.  *Woodford*, 548 U.S. at 92.  In the habeas corpus context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  "To 'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies . . ."  *Id.* at 848 (citation omitted; emphasis in original).  In habeas, "the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default."  *Woodford*, 548 U.S. at 92.  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003).

Under the procedural default component of § 1997e(a), an inmate's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005); *Spruill v. Gillis*, 372 F.3d 218, 222 (3rd Cir. 2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations.") Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the Federal Constitution or the intended purposes of § 1997e(a). *See Spruill*, 372 F.3d at 232.

II. **MDOC Grievance Policy**

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this Complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue

---

[1]The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ T (emphasis in original).[2]  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due.  *Id.* at ¶¶ R, DD.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances.  *Id.* at ¶ FF.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶ HH.  The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.  Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process.   *Id.* at ¶ U.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ."  *Id.*

The Grievance Policy requires prisoners to file grievances in a responsible manner.  A grievance may be rejected if it is: (1) "vague, illegible, contains multiple unrelated issues, or raises

---

[2] In *Jones*, the Supreme Court rejected the requirements imposed by the Sixth Circuit that, in order to properly exhaust, all defendants named in the complaint must have been named in the Step I grievance.  127 S. Ct. at 922-23.  However, the *Jones* Court relied upon the version of the policy that took effect on November 1, 2000.  In that version of the policy, there was no requirement that particular officials must be named in a Step I grievance.  In this case, the version of the policy that became effective on December 19, 2003 governs the grievances filed by Plaintiff.  The 2003 version of the policy requires a prisoner to provide in his grievance the names of all those involved in the issue.

issues that are duplicative of those raised in another grievance filed by the grievant;" (2) the grievant is on modified access and has filed a grievance in violation of the rules governing modified access; (3) the grievant did not attempt to resolve the issue with the staff member involved before filing the grievance; and (4) the grievance is filed in an untimely manner. *Id.* at ¶ G.

### III. Grievances

Plaintiff filed four grievances at ACF concerning medical treatment. Each grievance will be discussed below.

#### A. ACF-2005-06-564-12d1 (Dkt. No. 10-4)

Plaintiff filed a Step I grievance on June 1, 2005, claiming that he was not being provided with pain medication for his knee. Plaintiff stated in part: "[I] saw the doctor an[d] he told me that he was [going] to change my pain med. They gave me seven pills last month[.] Sometime I saw the doctor and told him what happen[ed] and he said I was lucky to get that!" Plaintiff further claimed that Dr. Gelabert told him in April or early May that he would order Plaintiff a knee brace, but Plaintiff had not received it.

Defendant Parker, the Step I respondent, concluded that Plaintiff was receiving medical treatment consistent with MDOC policy. She stated:

(1) Grievance - not receiving pain medication

(2) Prisoner has advanced degenerative knee disease. Wears a brace. Has been on Tylenol and Motrin for the pain. Celemax was denied per Regional Medical Director. Started on Etodoloc 300 mg. *Prisoner is requesting surgery*. Health care has been provided consistent with P 03.04.100 Health Services.

(emphasis added.) In his Step II appeal, Plaintiff asserted that "the Step I Response by C. Parker indicating that, 'Health Care has been provided consistent with PD 03.04.100' is a false statement."

8

Plaintiff alleged that he had not received a brace and had received only seven doses of pain medication and that his prescription had run out with no refill. In addition, Plaintiff claimed that he had torn ligaments in his knee that required surgery. He further claimed that ACF Health Services was being deliberately indifferent to his serious injury. The Step I decision was upheld at Steps II and III.

Defendants Gelabert and CMS argue that Plaintiff failed to properly exhaust the claims set forth in Grievance No. ACF-2005-06-564-12d1 because the grievance failed to comply with the Grievance Policy. Specifically, Defendants maintain that the grievance was untimely and contained multiple unrelated issues in violation of MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ G. Plaintiff's grievance was not rejected as untimely or for containing multiple unrelated issues at any step of the grievance process. Because prison officials did not rely upon the above-cited rules by rejecting the grievance, Defendants cannot now argue that the grievance is procedurally defaulted for those reasons. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (the doctrine of procedural default is applicable only where the rule is actually relied upon by the state courts); *see also Woodford*, 548 U.S. at 92 (applying the doctrine of procedural default as it governs habeas corpus petitions). Defendants also argue that Plaintiff failed to name CMS as required by MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ T. The Grievance specifically mentioned Dr. Gelabert, who is employed by CMS. Because CMS only acts through its employees, Plaintiff's reference to Dr. Gelabert was sufficient to satisfy the exhaustion requirement for purposes of both Dr. Gelabert and CMS. *See Beedle v. DeMasi*, No. CIVA 05-70430, 2006 WL 2700753, at *3 (E.D. Mich. Sept. 18, 2006) (because an organization can only act through its agents, a grievance alleging wrongdoing of the agent is sufficient to exhaust against CMS).

9

In their motions for summary judgment, Defendants Parker and Peterson also argue that Plaintiff violated the grievance policy by failing to name them in his grievance. Defendant Parker admits that she was mentioned in the Step II appeal, but only in reference to her findings as the Step I respondent. While Plaintiff disputed Parker's findings in his Step II grievance appeal, he did not allege that she denied him medical treatment for his knee. Accordingly, Plaintiff failed to exhaust his claim against Defendants Parker and Peterson in Grievance No. ACF-2005-06-564-12d1.

B. ACF-2005-09-1030-12f1 (Dkt. No. 10-5)

In his second grievance filed on September 14, 2005, Plaintiff complained that he had been kiting Health Services about pain in his left arm and knee. Plaintiff injured his left arm when his knee gave out and he fell on June 26, 2005. Plaintiff alleged that he was unable to move his left wrist and that moving his left arm was very painful. Plaintiff claimed that despite numerous kites seeking medical attention for his knee and left arm, he had not received a medical appointment or medical treatment. He again claimed that ACF Health Services was being deliberately indifferent to his medical needs. Plaintiff also stated that he had not received pain medication, which allegedly was ordered on August 29, 2005.

In the Step I response issued on October 27, 2005, Defendant Parker stated that Plaintiff was seen by the doctor on four occasions regarding his knee and was receiving care consistent with department policy. In his Step II grievance appeal, Plaintiff disputed Defendant Parker's statement that he had been provided care consistent with MDOC policy, particularly when she ignored the portion of his grievance concerning his arm. Plaintiff's Step II and III grievance appeals were denied.

With regard to Grievance No. ACF-2005-09-1030-12f1, Defendants Gelabert and CMS contend that the grievance was untimely, raises multiple issues and was duplicative of Grievance No. ACF-2005-06-564-12d1. Prison officials did not invoke the alleged default by rejecting Plaintiff's grievance on any of the grounds asserted by Defendants. Consequently, Plaintiff's grievance is not procedurally defaulted on any of those grounds. *See Maupin*, 785 F.2d at 138.

Defendants Parker and Peterson claim that Plaintiff failed to satisfy the exhaustion requirement because he did not name them in his grievance. Defendants argue that "[b]ecause only the prisoner knows the names of those he wants to sue, only the prisoner can determine whether he has listed all relevant parties. The [MDOC] cannot read prisoners' minds, so grievances cannot be rejected for failure to list all relevant parties." (Def. Peterson's Br. in Supp., 3-4, Dkt. No. 10; Def. Parker's Br. in Supp., 3-4, Dkt. No. 28.) Defendants' argument is unpersuasive. In a grievance that does not name any individuals, it is obvious from the face of the grievance that the prisoner did not comply with the requirement to name all of those persons involved in the issue being grieved. In this case, however, Plaintiff's grievance was not rejected for failure to name any individual persons. While Plaintiff apparently failed to follow the grievance policy precisely, prison officials did not rely on the default by rejecting the grievance for failure to comply. *See Maupin*, 785 F.2d at 138. Moreover, under circumstances such as this, where a prisoner is sending kites to health services requesting medical care, it would be difficult if not impossible for the prisoner to know the specific health care providers who are responsible for the denial of treatment. Accordingly, Petitioner properly exhausted his claims based on health care staff's failure to provide proper medical care for his knee. The claim is exhausted as to all health care staff, which includes all of the Defendants named in the instant case.

C. <u>ACF-2005-10-1153-12d1 (Dkt. No. 10-6)</u>

Plaintiff filed his third Step I grievance on October 10, 2005, claiming that he was not being provided with proper medical treatment for his knee. Plaintiff stated in part:

> I was called out to ACF Health Services and was seen by RN Bushrie. I showed her my visible [sic] swollen knee requesting an X-ray or MRI to be scheduled, or to be seen by a doctor or nurse practitioner. I further disclosed that this has been a continuous problem related to my knee and being diagnosed as having a torn ligament requiring surgery. This was disclosed while I was at the Ingham County Jail before coming to the MDOC. I have written many Health Care Request forms seeking medical attention concerning my knee that has kept me in pain for the past 9 months . . . . My knee is visibly swollen and I am in serious pain wherefrom it is difficult to ambulate. My knee is getting worse, and I am being denied proper medical attention contrary to MDOC policies, and in direct violation of the United States Constitution's Eighth Amendment."

The Step I respondent, Defendant Parker, again found that health care was provided in accordance with Department policy. Plaintiff's Step II and III grievance appeals were denied.

Defendants CMS and Gelabert contend that Grievance ACF-2005-10-1153-12d1 is defective because it was untimely filed and was duplicative of Grievance No. ACF-2005-06-564-12d1. For the reasons previously stated, this argument must fail because the grievance was not rejected on either of the grounds asserted by Defendants. All of the Defendants also claim that Plaintiff failed to name them in the grievance. In this instance, Plaintiff named Nurse Bushrie in his Step I grievance. Because Plaintiff named at least one person in his grievance, prison officials could not have rejected Plaintiff's grievance for failing to name individuals in his grievance. At the time Plaintiff filed his grievance, prison officials could not have known that Plaintiff intended to sue additional individuals with regard to the claim raised in his grievance. Consequently, Defendants' motions for summary judgment was the first opportunity to raise the default. Because Plaintiff failed to name Defendants in his grievance, the claim asserted in his grievance is procedurally defaulted.

However, as set forth above, Plaintiff exhausted his administrative remedies against all of the named Defendants in his previous grievances.

### D.  ACF-2005-10-1194-12e2 (Dkt. No. 10-7)

In the fourth Step I grievance filed on October 19, 2005, Plaintiff claimed that he had an accident on October 17, when his knee gave out and he landed on his elbow.  Plaintiff asserted that his elbow was swollen to the size of a baseball and was very painful.  Plaintiff claimed that his condition constituted a medical emergency, yet medical care was delayed for 28 hours.  While Plaintiff mentioned his knee in the grievance, he focused on the injury he suffered to his elbow and the delay in treating that injury.  Because this grievance concerned a medical issue other than Plaintiff's knee, it is not relevant to determining whether Plaintiff exhausted his administrative remedies as to the claim asserted in this case.

## **Conclusion**

For the foregoing reasons, Defendants' Motions for Summary are denied.

An Order consistent with this Opinion shall issue.


DATED in Kalamazoo, MI:  
    September 30, 2008

     /s/ Richard Alan Enslen  
RICHARD ALAN ENSLEN  
SENIOR UNITED STATES DISTRICT JUDGE

13