UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY OWENS,

       Plaintiff,                              Hon. Paul L. Maloney

v.                                               Case No. 1:07 CV 934

CORRECTIONAL MEDICAL
SERVICES, et al.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on <u>Defendant Correctional Medical Services, Inc.'s Motion to Dismiss</u>. (Dkt. #49). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **denied**.

**BACKGROUND**

The following allegations are contained in Plaintiff's complaint. (Dkt. #1). On May 24, 2004, while he was incarcerated at the Ingham County Jail, Plaintiff injured his left knee. Plaintiff "was not made aware of the extent of his injuries until Nov[ember] 25, 2004, by Ingham County Jail medical personnel." On December 3, 2004, Plaintiff was transferred to the Michigan Department of Corrections Reception and Guidance Center (RGC) facility, at which time he informed "nurses" that his knee injury required surgery. The Ingham County "Medical Department" subsequently transmitted a memorandum to the RGC medical department. This memorandum, dated December 7, 2004, indicates that Plaintiff

had been "referred to an orthopedic surgeon, but was released prior to facilitating that referral." The memorandum included a copy of a July 8, 2004 MRI of Plaintiff's left knee.

On or about January 6, 2005, Plaintiff was transferred to the Florence Crane Correctional Facility (ACF). Upon arriving at ACF, Plaintiff informed Defendant Parker "that he needed to have surgery" on his left knee. Parker failed to review Plaintiff's medical file, but instead provided Plaintiff with Tylenol and Ibuprofen. While he was incarcerated at ACF, Plaintiff was examined "on numerous occasions" by Defendants Parker, Peterson, and Gelabert, who "all failed to provide the proper medical treatment" despite being aware of his medical condition.

Plaintiff continued to complain about his knee condition and two years later he was examined by an orthopedic surgeon. One month after this examination, surgery was performed on Plaintiff's knee. This two year delay in treatment caused Plaintiff to suffer "undo pain and caused his medical condition to worsen." Specifically, Plaintiff's "pattellofemoral ligament and femoral trochlea ligament [were] almost completely destroyed." Plaintiff also suffered "severe degenerative arthritis" and must use a cane to ambulate. Plaintiff is also unable to place "any strenuous pressure" on his left knee or perform any work requiring him to stand for longer than one hour.

Plaintiff initiated this action on September 20, 2007, against Correctional Medical Services (CMS) and Defendants Parker, Peterson, and Gelabert. Plaintiff asserts that Defendants failed to provide him with necessary medical care, which the Court interprets as a claim implicating Plaintiff's Eighth Amendment right not to be subjected to cruel or unusual punishment. CMS now moves to dismiss Plaintiff's claims against it for failure to state a claim upon which relief may be granted.

**LEGAL STANDARD**

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all Plaintiff's allegations and construe the complaint liberally in his favor. *See Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000). Furthermore, complaints filed by pro se plaintiffs are held to an "especially liberal standard, and should only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**ANALYSIS**

CMS is not vicariously liable for the actions of its employees and, therefore, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)); *Street v. Corr. Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996); *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir., Mar. 26, 2001). To establish liability against CMS, Plaintiff must demonstrate that he suffered a violation of his federal rights "because of" a CMS policy, practice, or custom. *See Thomas*, 398 F.3d at 429. In his complaint, Plaintiff asserts the following:

> CMS has had a long standing policy and custom, in not referring prisoners to getting the needed surgery, in a timely manner. And it was because of this policy and custom that plaintiff['s] medical condition worsened.

(Dkt. #1 at 5a).

CMS recognizes that it can be held liable for injuries caused by its policies, practices, or customs. CMS nevertheless asserts that Plaintiff's pleading is deficient because Plaintiff has failed to

"identify the policy" that caused his injury, "connect the policy to [CMS] itself and show that the particular injury was incurred because of the execution of that policy." The Court agrees that Plaintiff's pleadings must satisfy this standard. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993); *Dorr v. City of Ecorse*, 2008 WL 5397760 at *3 (6th Cir., Dec. 29, 2008). The Court disagrees with Defendant, however, as to whether Plaintiff's pleadings comply therewith. Plaintiff has identified the policy that he believes caused his injury, namely CMS' alleged policy of failing to timely refer prisoners for necessary surgery. Plaintiff's allegation that this is a *CMS* policy certainly suffices to "connect" this policy to CMS. Finally, Plaintiff clearly alleges that his Eighth Amendment rights were violated "because of this policy and custom." In sum, the Court finds that Plaintiff's pleadings, as to Plaintiff's claim against CMS, are sufficiently specific to survive the present challenge.

In addition to asserting that Plaintiff's pleadings lack the requisite specificity, Defendant, citing to *Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005), further asserts that "Plaintiff may not rely upon an isolated incident, but must show a pattern or repeated evidence of such conduct." Again, the Court does not dispute that this constitutes an accurate statement of the law, but simply disagrees with Defendant as to its application in the present instance.

In *Thomas*, Chattanooga Police Officer Abernathy, while investigating a domestic disturbance call, shot Thomas several times. *Id.* at 427-28. Thomas and his wife did not sue Abernathy, but instead sued the Chattanooga Police Department alleging that Thomas' constitutional rights were violated pursuant to a departmental policy that condoned the use of excessive force. *Id.* at 428. The Police Department subsequently moved for summary judgment in the district court, which was granted on the ground that the Thomases "had not presented a genuine issue of any material fact" on the issue of the Department's municipal liability. *Id.*

On appeal, the Sixth Circuit affirmed the decision granting the Department's motion for summary judgment, concluding that the Thomases had failed to present evidence of a factual dispute as to the existence of a policy that caused his injury. *Id.* at 428-34. Specifically, the court found that plaintiffs' expert failed to sufficiently support his opinion that given the number of excessive force complaints filed against it, the Police Department "must have an unwritten policy of condoning excessive force." *Id.* at 430-32. The *Thomas* court also examined whether the circumstances of the incident in question (i.e., Abernathy's shooting of Thomas) and the investigation thereof was sufficient to present a genuine factual dispute as to the existence of a policy that caused plaintiffs' injuries. In so doing, the court stated as follows:

> Appellants also argue that [their expert witness] partially based his conclusion on the fact that Thomas was shot in violation of Department policy, and the internal investigation nonetheless determined the shooting to be justified. There is potentially a real question as to whether officer Abernathy was justified in shooting Thomas. But this question is not before us. The question here is whether there was some sort of policy, custom, or practice in the Chattanooga Police Department of condoning excessive force, and under *Doe,* such a policy must be shown by a clear and persistent pattern. The danger in appellants' argument is that they are attempting to infer a municipal-wide policy based solely on one instance of potential misconduct. This argument, taken to its logical end, would result in the collapsing of the municipal liability standard into a simple *respondeat superior* standard. This path to municipal liability has been forbidden by the Supreme Court. Thus, without showing more than officer Abernathy's potentially excessive use of force in this particular case, Thomas cannot survive summary judgment.

*Thomas*, 398 F.3d at 432-33 (internal citations omitted).

Relying on this passage, Defendant CMS asserts that Plaintiff "has not presented evidence to show the required pattern of conduct." CMS asserts that such merits the dismissal of Plaintiff's claims against it. The Court disagrees for two reasons.

First, Defendant CMS has not moved for summary judgment. Thus, whether Plaintiff has "presented *evidence* to show the required pattern of conduct" is not relevant. The question is not whether Plaintiff has submitted sufficient evidence, but simply whether he has stated a claim on which relief may be granted. As discussed above, with respect to his claim against CMS, Plaintiff's pleadings satisfy the relevant standard. Furthermore, while the Court shares the concern articulated by the *Thomas* court in the language quoted above, such is not presently applicable. In his complaint, Plaintiff is not attempting to establish the existence of a policy "based solely on one instance of potential misconduct." Plaintiff clearly alleges the existence of a "long standing policy" pursuant to which CMS has failed to refer "prisoner*s*" (i.e., more than one individual which necessarily implies *multiple* incidents) for necessary surgical procedures.

In sum, when interpreting Plaintiff's pleadings pursuant to the appropriate standard, the Court cannot conclude that it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" as to his claim against CMS. Accordingly, dismissal of Plaintiff's claim against CMS at this stage of the proceedings is unwarranted. The Court recommends, therefore, that Defendant's motion be denied.

## CONCLUSION

For the reasons articulated herein, the Court recommends that <u>Defendant Correctional Medical Services, Inc.'s Motion to Dismiss</u>, (dkt. #49), be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                                Respectfully submitted,

Date:  April 22, 2009                          /s/ Ellen S. Carmody
                                                    ELLEN S. CARMODY
                                                    United States Magistrate Judge