UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| **TERRY LYNN OWENS #476485,** | Case No. 1:07-cv-934 |
| Plaintiff, | HONORABLE PAUL L. MALONEY |
| v. | Magistrate Judge Ellen S. Carmody |
| **CORRECTIONAL MEDICAL SERVICES, INC.,** RAYMOND GELABERT, Doctor, CAROL PARKER, Nurse, and UNKNOWN PETERSON, Nurse, each in its/his/her official and personal capacity, |  |
| Defendants. |  |

## OPINION and ORDER

### Overruling Defendant CMS's Objections and Adopting the R&R;
### Denying CMS's FED. R. CIV. P. 12(b)(6) Motion to Dismiss for Failure to State a Claim

Terry Lynn Owens ("Owens") is incarcerated at the Michigan Department of Corrections ("MDOC")'s Florence Crane Correctional Facility ("ACF"). Owens brings this 42 U.S.C. § 1983 civil-rights action against Correctional Medical Services, Inc. ("CMS") and three of its employees or agents – Dr. Raymond Gelabert M.D., Nurse Carol Parker, and Nurse Peterson – purporting to name each defendant in his/her/its personal and official capacity. Owens alleges that in May 2004 he suffered a work-related injury while housed at the Ingham County, Michigan Correctional Facility ("the Ingham County jail"), tearing ligaments in his left knee. He alleges that he did not become aware of the extent of his injuries until November 25, 2004, shortly before his December

3, 2004 transfer to the MDOC Reception and Guidance Center in Jackson, Michigan ("the reception center"). Several days after the transfer, on December 7, 2004, the Ingham County jail's medical department sent a memorandum to the reception center stating that Owens had been "referred to an orthopedic surgeon, but was released prior to facilitating that referral", i.e., that he had not been housed continuously for a long-enough period to effectuate the referral. *See* Comp, Ex 1. Accompanying the memorandum was a July 8, 2004 MRI[1] of Owens's left knee.

After about two and a half months at the Jackson reception center, MDOC transferred Owens to his current facility, ACF, on January 6, 2005. When Owens arrived, he was seen by defendant Nurse Parker and explained his need for knee surgery, but she merely gave him Tylenol and prescribed ibuprofen without reviewing his medical file. Over the next two years at ACF, Owens was seen by defendants Dr. Gelabert, Nurse Parker, and Nurse Peterson, all of whom are employees or agents of defendant Correctional Medical Services, Inc. ("CMS"); he repeatedly complained that his knee was painful and in need of surgery, and he wrote four grievances about the matter: ACF-2005-06-564-12d1 (June 2005), ACF-2005-09-1030-12fl (September 2005), and ACF-2005-10-1153-12d1 and ACF-2005-10-1194-12e2 (both October 2005).

Finally, Owens was seen by an orthopedic surgeon in January 2007 and underwent surgery

---

[1]

MRI stands for magnetic resonance imaging, which is

a non-ionizing (non-x-ray) technique using magnetic fields and radio frequency waves to visualize anatomic structures. It is useful in detecting joint, tendon, and vertebral disorders. The patient is positioned within a magnetic field as radio wave signals are conducted through the selected body part. Energy is absorbed by tissues and then released.

*Bailey v. SSA*, – F. Supp.2d –, –, 2009 WL 1554679, * n.3 (W.D. Mich. June 3, 2009) (Maloney, C.J.) (quoting Stedman's Medical Dictionary (28th ed. 2006) at B13) (other citations omitted).

in February 2007. In the aftermath of the surgery, Owens still has severe degenerative arthritis of the left knee, has to use a cane to walk, and cannot perform any tasks which require standing for more than an hour. Owens filed the instant complaint in September 2007, claiming that the unjustified two-year delay in the knee surgery caused unnecessary pain and caused his condition to worsen unnecessarily, substantially destroying his patellofemoral[2] and femoral trochlear ligaments, allowing advanced degeneration of the patella and damage to his anterior cruciate ligament.[3] Owens claims that CMS has a custom or policy of not referring prisoners for needed surgery in a timely manner, and he seeks compensatory and punitive damages. The Magistrate Judge correctly construed this as a claim that the defendants' failure to timely provide necessary medical care violated Owens's Eighth Amendment right to be free of cruel or unusual punishment.

All four defendants moved for summary judgment on the ground that Owens had failed to

---

[2]

The patellofemoral joint is the joint between the articular surface of the patella, and the patellar surface of the femur, *Beattie v. US*, 1998 WL 668042, *7 n.28 (D. Minn. July 16, 1998) (citing DORLAND'S ILLUS. MEDICAL DICTIONARY (28th ed. 1994) at 144), which is the thigh bone, *Reese v. Astrue*, 2009 WL 499601, *1 n.1 (S.D. Ind. Feb. 27, 3009) (citing J.E. Schmidt, Attorneys' Dictionary of Medicine and Word Finder (2007) at A-55).

[3]

"The anterior cruciate ligament (ACL) is one of the four major ligaments of the knee. It connects from a posterior-lateral part of the femur to an anterior-medial part of the tibia." *Eagle v. Astrue*, 2008 WL 4368158, *3 n.3 (E.D. Mo. Sept. 18, 2008) (citing STEDMAN'S MEDICAL DICTIONARY (28th ed. 2006) at 1081). More specifically, he ACL is

> a cruciate ligament of each knee that is attached in front to the more medial aspect of the tibia, that passed upward, backward, and laterally through the middle of the knee crossing the posterior cruciate ligament to attach to the femur, that functions to prevent hyperextension of the knee and to keep the femur from sliding backward in relation to the tibia . . . .

*Chambers v. Lehmann*, 2005 WL 2291899, *1 n.2 (Mich. App. Sept. 20, 2005) (p.c.) (P.J. Smolenski, JJ. Murphy & Davis) (quoting MERRIAM WEBSTER MEDICAL DICTIONARY (2003)), *leave to app. denied*, 713 N.W.2d 766, *recon. denied*, 721 N.W.2d 587 (Mich. 2006).

exhaust his administrative remedies under MDOC Policy Directive 03.02.1390 (2003 version) before coming to federal court. After the Honorable Richard Alan Enslen, Senior U.S. District Judge, denied the motions on September 30, 2008, the case was reassigned to this judge in December 2008. *See* Doc. Nos. 44, 45 and 56.

Defendant CMS alone filed a motion to dismiss for failure to state a claim on which relief can be granted, which was automatically referred to the Honorable Ellen S. Carmody, United States Magistrate Judge, pursuant to 28 U.S.C. § 636 and W.D. MICH. LCIVR 72.2(b). Magistrate Judge Carmody issued a Report and Recommendation ("R&R") on April 22, 2009 [document #59], CMS filed timely objections on April 28, 2009 [document #60], and plaintiff Owens timely filed a response to the objections on June 26, 2009, the deadline established by the court [document #62]; CMS did not file a reply brief in support of its objection. CMS's objection is sufficiently specific and articulated to trigger *de novo* review of the portion of the R&R to which it has objected.[4]

**The court finds the R&R to be well-reasoned and is unconvinced by defendant CMS's objection.** For the reasons explained by the R&R, Owens has stated a claim on which relief can be

---

[4]

"'Only those objections that are specific are entitled to a *de novo* review under the statute.'" *Westbrook v. O'Brien*, 2007 WL 3462337, *1 (W.D. Mich. Nov. 15, 2007) (Maloney, J.) (citing *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (no *de novo* review where the objections are frivolous, conclusory or too general because the burden is on the parties to "pinpoint those portions of the Magistrate's report that the district court must specifically consider")).

*See, e.g., Fairfield v. Wacha*, 2008 WL 584940, *2 (W.D. Mich. Feb. 28, 2008) (Maloney, J.) ("Fairfield's objection does not cite any case law or any Constitutional, statutory or regulatory provisions, and he does not attempt to *substantively* address any of the Magistrate Judge's legal reasoning or conclusions. [T]hese failings render Fairfield's purported objection the same as no objection at all.") (citing, *Wallace v. Adams*, 51 F.3d 274, 1995 WL 141385 (6th Cir. Mar. 24, 1995) (p.c.) and *Bates v. Chapleau*, 37 F.3d 1498, 1994 WL 532937 (6th Cir. Sept. 30, 1994) (p.c.)).

granted, so Rule 12(b)(6) dismissal is not warranted as to the claims against CMS.

**Owens and CMS do not contest the Magistrate's correct statement of the law in this area.** Namely, CMS cannot be held vicariously liable under 42 U.S.C. § 1983 for injuries inflicted solely by its employees or agents. R&R at 3, *see also Iqbal v. Ashcroft*, – U.S. –, –, 129 S.Ct. 1937, 1948 (May 18, 2009) (Kennedy, J., for the majority) ("[V]icarious liability is inapplicable to *Bivens* and § 1983 suits . . . .")[5],), *cause remanded*, – U.S. –, –, 129 S.Ct. 2430 & 2431 (May 26, 2009); *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 122 (1992) (unanimous Court) ("The city is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer.").

Accordingly, "CMS is not vicariously liable for the actions of its employees." *Heggie v. Kuzma*, 2009 WL 594908, *11 (W.D. Mich. Mar. 6, 2009) (Maloney, C.J.) (citing *Street v. CCA*, 102 F.3d 810, 818 (6th Cir. 1996)) (citing *Monell*, 436 U.S. 658)).[6] "[T]o establish [the possibility

---

[5]

*Cf. Iqbal*, – U.S. at –, 129 S.Ct. at 1948 (analogizing *Bivens* claims to section 1983 claims and holding that in *Bivens* context as well, "[g]overnment officials [and companies which are state actors or agents of the State due to their contract and relationship with the State] may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.") (citing *Monell v. NY Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under § 1983) and *Robertson v. Sichel*, 127 U.S. 507, 515-16 (1888) (Blatchford, J., for a unanimous Court) ("A public officer or agent is not responsible for the misfeasances or position wrongs [sic], or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties.") and *Dunlop v. Munroe*, 7 Cranch 242, 269, 3 L.Ed. 329 (U.S. 1812)).

[6]

This principle is not changed by the fact that Owens purports to sue State-actor CMS in its "official and individual capacity." Nor will Owens be able to circumvent this rule to impose section 1983 vicarious liability on any of the three defendant CMS employees/agents as a supervisor of another, or by naming them in their official and individual capacities. *See Doe v. Magoffin Cty. Fiscal Ct.*, 174 F. App'x 962, 969 (6th Cir. 2006) (Suhrheinrich, <u>Rogers</u>, Cook) ("it is clear that negligence or recklessness is not enough to hold supervisors liable under § 1983. [T]he Supreme Court's concern in *Brown*– that municipalities not become vicariously liable – is equally implicated

of] liability against CMS, Plaintiff must demonstrate that CMS had a 'policy, practice or custom that resulted in the injury." *Baker v. Vanderark*, 2008 WL 2788528, *3 (W.D. Mich. July 17, 2008) (Maloney, J.) (quoting *Moreno v. Metro. Gen. Hosp.*, No. 99-5205, 210 F.3d 372, 2000 WL 353537, *2 (6th Cir. Mar. 28, 2000) (Kennedy, Ryan, Boggs) (citing *Monell*, 436 U.S. at 690) and citing *Starcher v. CMS, Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (Jones, Batchelder, Moore)). Owens had to state a claim that CMS "policymakers made a 'deliberate choice' among various alternatives and the policy caused the injury." *Starcher*, 7 F. App'x at 465 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

**CMS's objections do not undermine the Magistrate's conclusion that under the circumstances, Owens sufficiently identified the "policy, practice or custom" of CMS which he says caused or exacerbated his injuries.** *See* R&R at 3-4 (following *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) and *Dorr v. City of Ecorse*, 305 F. App'x 270 (6th Cir. 2008)); *see also Coogan v. City of Wixom, Michigan*, 820 F.2d 170, 176 (6th Cir. 1987). Namely, Owens alleges that "CMS has had a long standing policy and custom[7], in not referring prisoners to

---

when supervisors are sued in their individual capacities . . . .") (citing *Doe v. Claiborne Cty., Tennessee*, 103 F.3d 495, 513 (6th Cir. 1996) and discussing *Bd. of Cty. Comm'rs. of Bryan Cty. Oklahoma v. Brown*, 520 U.S. 397 (1997) (O'Connor, J., joined by C.J. Rehnquist & JJ. Scalia, Kennedy and Thomas).

*Cf., e.g., Sargent v. City of Toledo Police Dep't*, 150 F. App'x 470 (6th Cir. 2005) (Siler, Daughtrey, S.D. Ohio D.J. Marbley) (police officer could not be held vicariously liable for the allegedly illegal actions of his partner, a subordinate officer; "Whether Whatmore committed a Fourth Amendment violation when he entered Sargent's home [or not], Taylor is not vicariously liable for any alleged violation because there is no indication either that Taylor ordered Whatmore to enter the house illegally or that Taylor knew that Whatmore entered the home without consent.")., *cert. denied*, 549 U.S. 814 (2006).

[7]

CMS objects that "Plaintiff's Complaint cites no *specific* CMS policies or procedures which allegedly violated Plaintiff's civil rights." CMS Objections at 3. But CMS seems to be asking for

6

get[] the needed surgery, in a timely manner." Comp ¶ 5a; *contrast Crehan v. Davis*, 2009 WL 1138653, *5 (W.D. Mich. Apr. 27, 2009) (Maloney, J.) ("The complaint does not identify, or even allege the existence of, any official policy or custom that was the moving force of the alleged constitutional violation. Therefore . . . any claim against those municipalities should be dismissed.").

**Nor does CMS persuasively rebut the Magistrate's determination that for the mere purpose of notice pleading and Rule 12(b)(6) dismissal, Owens sufficiently connects CMS to the alleged custom of delaying or eschewing necessary medical care for prisoners.** Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the leader is entitled to relief." The complaint gives CMS "fair notice of what the . . . claim is and the grounds upon which it rests," and raises Owens' right to relief against CMS above the speculative level, *Twombley*, 550 U.S. at 555, especially given that he is a prisoner proceeding *pro se*, *see Hoye v. Nelson*, 2009 WL 81115, *3 (W.D. Mich. Jan. 8, 2009) (Maloney, C.J.) ("Following *Pardus*

---

an allegation that CMS had an official policy – either written, formally adopted, or publicly stated – of delaying needed medical care for inmates. That might be necessary to state a claim that CMS had a "policy" that caused or led to the Eighth Amendment violation, but it is *not* necessary in order to state a claim that CMS had a "custom" that caused or led to the violation. As a sister court recently explained,

> The *Monell* Court described a . . . policy as including "'a policy statement, ordinance, regulation, or decision officially adopted and promulgated . . . .'" An actionable "custom" in contrast, "has not received formal approval through . . . official decisionmaking channels." A § 1983 plaintiff may establish the existence of a custom by showing that policymaking officials knew about and acquiesced in the practice at issue. *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004).

*Ebron v. Monroe Cty. Jail*, 2008 WL 268826, *5 (E.D. Mich. Jan. 29, 2008) (John Corbett O'Meara, J.) (quoting *Monell*, 436 U.S. at 690 and 690-91).

7

[*Erickson v. Pardus*, 551 U.S. 89 (2007)], the Sixth Circuit . . . noted prisoner complaints [assert]ing claims under section 1983 need not allege specific facts.") (citing *US ex rel. Snapp v. Ford Motor Co.*, 532 F.3d 496, 503 n.6 (6th Cir. 2008)). Therefore, Owens has stated a claim that by adhering to its customary practice, CMS violated the Eighth Amendment and caused injuries that were not inevitable, but rather, could have been avoided or ameliorated through more-promptly rendered care. *Cf. Hoye*, 2009 WL 81115 at *3 ("The complaint alleges Defendants repeatedly denied Plaintiff treatment. The complaint does not assert Plaintiff was generally denied treatment, rather, it asserts *Defendants* denied Plaintiff treatment. For the purposes of Defendants' [Rule 12(b)(6)] motion, the assertion is sufficient to satisfy the subjective prong of a claim for deliberate indifference. * * * Finally, the complaint does allege facts sufficient to satisfy the objective prong of a claim for deliberate indifference. Plaintiff alleges [that he] had 'back spasms' and an 'abnormality in his spine' and that he had to get his 'reinjured back treated' and to 'be seen for [his] continually worsening back pain and spasms'") (record citation omitted).[8]

**Finally, CMS does nothing to undermine the Magistrate's conclusion that Owens has not impermissibly relied on "an isolated incident"** but has sufficiently alleged "a pattern or repeated evidence of such conduct", as required by *Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005) and other precedent. *See* R&R at 4-6; *see also Mann v. Helmig*, 289 F. App'x 845, 851 (6th Cir.) (Martin, Gibbons, Griffin), *cert. denied*, – U.S. –, 129 S.Ct. 767 (2008). Generally, Owens' complaint alleges that the prolonged delay in providing the knee surgery and other care was

---

    8
    *Contrast Hershey v. Berghuis*, 2009 WL 723027, *3 (W.D. Mich. Mar. 11, 2009) (Maloney, C.J.) (in prisoner's § 1983 action asserting Eighth Amendment claim due to alleged lack of medical care, "Plaintiff fails to even mention Defendants . . . in the body of his complaint. As a result, his allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 . . . .").

caused by CMS's "long standing" practice. More specifically, Owens alleges that CMS (or its employees acting pursuant to its customary practice) declined numerous opportunities to refer him for additional examination, testing, and the needed surgery – when he *repeatedly* complained that his knee condition was painful and *required surgery*, and when he filed four grievances (from June to October 2005) concerning their failure or refusal to arrange such care.[9]

Whether Owens can present sufficient competent, relevant evidence for a reasonable factfinder to find that CMS actually *committed* the Eighth Amendment violation stated is a matter

---

[9]

Again, more will be required of Owens if CMS moves for summary judgment. *See Peet v. City of Detroit*, 502 F.3d 557, 567 (6th Cir. 2007) (Rogers, J., joined by Gibbons, J.) ("Peet argues in his brief that the evidence creates a genuine issue of material fact about whether Detroit has a 'custom' of 'intimidating witnesses, falsely accusing/arresting witnesses during police investigations, and retaliating against citizens who do not support the department in its coercive activities. * * * Ultimately, Peet has supplied too little Rule 56 evidence to create a genuine issue of material fact regarding the custom theory . . . .");

*Aureus Holdings, Ltd. v. City of Detroit*, 303 F. App'x 265, 270-71 (6th Cir. 2008) (Rogers, Sutton, McKeague) ("Aureus may establish municipal liability under § 1983 upon a showing that the City had 'a custom of tolerance or acquiescence of federal rights violations. [*Thomas*, 398 F.3d at 429]. To prevail on such a theory, however, Aureus must demonstrate . . . that there was a clear and persistent pattern of illegal activity; the City had notice of it; the City tacitly approved the unconstitutional activity such that its deliberate indifference amounts to an official policy of inaction; and this custom or policy of inaction was the moving force behind the constitutional deprivation. Yet . . . Aureus has merely *argued* the existence of such a policy of inaction or *'de facto* policy' and has adduced no *evidence* of a pattern of similar activity. Such bald allegations are clearly insufficient to forestall summary judgment."), *cert. denied*, – U.S. –, 129 S.Ct. 2387 (2009);

*Martin v. City of Taylor*, 2006 WL 1779394, *8-10 (E.D. Mich. June 26, 2006) (discussing the type and quality of evidence needed to support an expert opinion that a municipality or other state actor had a policy or custom which caused a constitutional violation for § 1983 purposes);

*Reinhardt v. Dennis*, 399 F. Supp.2d 803, 807-09 (W.D. Mich. 2005) (McKeague, J.) (holding that uncontroverted evidence introduced by § 1983 plaintiff was "sufficient to satisfy the 'persistent pattern of illegal activity' element of plaintiff's claim" against county arising out of county police officer's alleged sexual harassment and abuse of plaintiff).

to be determined on summary judgment or at trial, and CMS has not yet moved for summary judgment. *See, e.g., Miller v. Underwood*, 2008 WL 4283422, *2 (W.D. Mich. Sept. 15, 2008) (Maloney, C.J.) ("To survive a motion for summary judgment, allegations will not suffice; the party with the burden of proof at trial must point to concrete evidence supporting his . . . claims and establishing the existence of a genuine issue of material fact. * * * Plaintiff has offered no evidence creating a genuine issue of material fact that Defendant has an official policy of placing inmates in insect[-]infested cells or that he has sanctioned such action. Neither has Plaintiff presented any evidence that Defendant has a custom of such conduct. At best, Defendant has asserted that he was placed in a cell by agents of Defendant Underwood and that his cell had insects in it. Such assertion is insufficient to establish an official policy or custom.").[10]

**ORDER**

Accordingly, having reviewed the complaint, the briefs filed on defendant CMS's motion to dismiss and the plaintiff's opposition brief [document nos. 49-50 and 52], the R&R issued April 22, 2009, defendant CMS's timely objections, and the plaintiff's response to those objections:

Defendant CMS's objections [document # 60] are **OVERRULED**.

The Report & Recommendation [document # 59] is **ADOPTED**.

Defendant CMS's motion to dismiss the complaint for failure to state a claim on which relief

---

[10]

For an Eighth Amendment medical-care claim to survive *summary judgment*, "a prisoner who complains about a delay in receiving medical treatment must place into the record verifying medical evidence of a detrimental effect of the delay." *Maddle v. CMS, Inc.*, 2008 WL 839715, *7 (M.D. Tenn. Mar. 26, 2008) (citing *Napier v. Madison Cty., Kentucky*, 238 F.3d 739 (6th Cir. 2001)).

can be granted [document # 49] is **DENIED**.

This is <u>not</u> a final order.

**IT IS SO ORDERED this   23rd   day of July 2009.**

                                                         /s/ Paul L. Maloney
                                                         Honorable Paul L. Maloney
                                                         Chief United States District Judge